# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DARRELL JOE RIGGINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 15-CV-0058-JED-FHM |
| | ) | |
| MIKE HUNTER, Oklahoma | ) | |
| Attorney General,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Before the Court is Petitioner's amended 28 U.S.C. § 2254 habeas corpus petition (Doc. 7). Petitioner, appearing *pro se*, challenges the constitutional validity of the judgment and sentence entered against him in Tulsa County District Court Case No. CF-2012-156. In that case, a jury convicted Petitioner of endeavoring to manufacture methamphetamine, in violation of OKLA. STAT. tit. 63, § 2-408 (2011), after former conviction of a felony. Petitioner alleges he is entitled to habeas relief on three grounds: (1) the evidence is insufficient to support his conviction, (2) law

---

[1] Petitioner was incarcerated at the Northeast Oklahoma Correctional Center (NOCC) when he filed his amended habeas petition. *See* Doc. 7 at 1. In March 2017, Petitioner updated his address to reflect that he is no longer incarcerated. *See* Doc. 21. The Oklahoma Department of Corrections website reflects Petitioner's status as "inactive," but is not clear whether he was released on parole. *See* https://okoffender.doc.ok.gov, last visited March 24, 2018. In any event, Petitioner's release from custody does not deprive this Court of jurisdiction because he was in custody when he filed his amended habeas petition. *See Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070, 1073 (10th Cir. 2014) (noting that petitioner must satisfy § 2254(a)'s in-custody requirement at time habeas petition is filed and that prisoners released on parole may seek habeas relief). However, because Petitioner is not currently incarcerated, Mike Hunter, Oklahoma Attorney General, is substituted in place of Rodney R. Redman, NOCC's former warden, as party respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note this substitution on the record.

enforcement officers illegally searched his car, and (3) a trial witness gave false testimony. *See* Doc. 7. Respondent moved to dismiss the amended petition as a "mixed" petition, arguing Grounds 2 and 3 were unexhausted. *See* Doc. 11. By Order filed February 5, 2016 (Doc. 14), the Court denied Respondent's motion, but advised Petitioner that it would apply an anticipatory procedural bar[2] to the unexhausted claims raised in Grounds 2 and 3 unless Petitioner could demonstrate either "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his procedural default of these claims. *See* Doc. 14 at 6. As directed by the Court, Petitioner filed a response addressing the defaulted claims (Doc. 15), and Respondent filed a response addressing the merits of Petitioner's Ground 1 claim (Doc. 16). Respondent also provided the state court records necessary to adjudicate Petitioner's claims (Docs. 16, 17). Petitioner filed a reply to the response (Doc. 18). Respondent filed a response addressing Petitioner's arguments as to his defaulted claims (Doc. 19). For the reasons discussed below, the Court finds the amended habeas petition shall be denied.

## ***BACKGROUND***

In January 2012, Tulsa Police Officer Michelle Armentrout stopped Petitioner near the intersection of Pine and Lewis for driving a vehicle with an expired tag. Doc. 17-8, Tr. vol. 3, at 272-75.[3] Petitioner pulled into the parking lot of the Springdale Shopping Center. *Id.* at 275. When Armentrout approached the car, Petitioner confirmed he was the owner of the car and advised

---

[2] An "[a]nticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) (citation and internal quotation marks omitted).

[3] The record cites to the trial transcripts refer to the original transcript page number. For clarity, all other record cites refer to the CM/ECF page number in the upper, right-hand corner of each document.

Armentrout he had no insurance. *Id.* at 277. Petitioner's passenger, Ashley Snow, volunteered that she had outstanding warrants. *Id.* at 280-81. Armentrout performed a records check on Petitioner and Snow, confirmed that Snow had an outstanding arrest warrant, and arrested Snow. *Id.* at 281-82. Armentrout issued citations to Petitioner for the tag and insurance violations. *Id.* at 283. Based on the tag violation, Armentrout decided to have the car towed, but she told Petitioner he was free to leave. *Id.* at 284-88. Petitioner left. *Id.* at 285. Armentrout and a second officer began an inventory search of the car, discovered what they believed was a possible "meth lab," discontinued the search, and called in officers with specialized training in meth lab clean up. *Id.* at 286-91, 304.

Based on the items found in Petitioner's car, the State ultimately charged Petitioner with one count of endeavoring to manufacture a controlled dangerous substance (methamphetamine), in violation of OKLA. STAT. tit. 63, § 2-408, after former conviction of a felony. Doc. 17-10, O.R. vol. 1, at 80-82. Following a trial in Tulsa County District Court, a jury found Petitioner guilty as charged and, consistent with the jury's recommendation, the trial court imposed a 16-year prison sentence. Doc. 17-11, O.R. vol. 2, at 77, 81-82.

Represented by counsel, Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), alleging one proposition of error: the evidence was insufficient to support his conviction. Doc. 16-1, Pet'r App. Br., at 2. In an unpublished summary opinion, filed October 1, 2013, the OCCA rejected his sufficiency challenge and affirmed the trial court's judgment and sentence. Doc. 16-3, *Riggins v. State*, No. F-2012-955 (Okla. Crim. App. 2013) (unpublished) (hereafter, "OCCA Op."). Petitioner then filed an application for post-conviction relief in state district court, raising three propositions of error. *See* Doc. 16-4 at 3. The state district court denied relief. *Id.* Petitioner did not file a post-conviction appeal.

*DISCUSSION*

Petitioner, appearing *pro se*, filed his amended habeas petition on February 26, 2015. Doc. 7. Petitioner alleges he is entitled to habeas relief on three grounds: (1) the evidence is insufficient to support his conviction, (2) law enforcement officers illegally searched his car, and (3) a trial witness gave false testimony. *See* Doc. 7. Respondent concedes, and the Court finds, that Petitioner timely filed his federal habeas petition. Doc. 16 at 2; *see* 28 U.S.C. § 2244(d)(1) (imposing one-year statute of limitation for filing § 2254 habeas petition). Respondent argues, however, that § 2254(d) bars Petitioner's request for habeas relief on Ground 1 and that his Ground 2 and Ground 3 claims are procedurally barred. Doc. 16 at 5; Doc. 19 at 1-2.

**I.      Scope of habeas review**

The Antiterrorism and Effective Death Penalty Act (AEDPA) guides this Court's review of Petitioner's habeas claims. *See* 28 U.S.C. § 2254. Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2254(a). In addition, before a federal court may grant habeas relief, a state prisoner must exhaust available state-court remedies, *id.* § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullins*, 291 F.3d 658, 668 (10th Cir. 2002).

If the state court adjudicates the merits of a state prisoner's federal habeas claims, a federal habeas court may not grant relief on those claims unless the prisoner demonstrates that the state court's adjudication of those claims either (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States," *id.* § 2254(d)(1); (2) "resulted in a decision that . . . involved an unreasonable application of clearly established

4

Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* § 2254(d)(2).[4]

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (alterations in original) (quoting *Williams*, 529 U.S. at 405, 406). When the state court's decision "'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong; even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer*, 538 U.S. at 75-76). Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must also presume the correctness of the OCCA's factual findings unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In sum, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state-court decisions the "benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Thus, to obtain federal

---

[4]    As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

5

habeas relief a state prisoner ultimately "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

## II.    Analysis

### A.    Ground 1- Insufficient evidence

In Ground 1, Petitioner alleges the evidence is insufficient to support his conviction. He argues "[t]here was no evidence presented to the jury that [he] had any knowledge of the evidence they found in [his] car, due to the fact they had already released [him] from the scene before they searched the car." Doc. 7 at 5.

Respondent contends Petitioner is not entitled to relief on his Ground 1 claim under § 2254(d) because the OCCA's determination that the evidence is sufficient to support Petitioner's conviction is neither contrary to nor an unreasonable application of clearly established federal law. Doc. 16 at 5, 16.

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). *Jackson* supplies the clearly established legal rule governing Petitioner's claim. *See Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007) (identifying *Jackson* as constitutional standard for reviewing state habeas petitioner's sufficiency-of-the-evidence claim). Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*).

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Id.* (internal citations omitted) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)); *see also id.* at 656 ("[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."); *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (noting that *Jackson* "standard requires [reviewing court] to accept the jury's resolution of the evidence as long as it is within the bounds of reason"). In applying the *Jackson* standard on federal habeas review, the Court looks to state law to determine the substantive elements of the crime. *Johnson*, 566 U.S. at 655. "[B]ut the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Id.*

Petitioner challenges his conviction for endeavoring to manufacture methamphetamine, in violation of OKLA. STAT. tit. 63, § 2-408 (2011), after former conviction of a felony. To obtain his conviction, the State had to prove, beyond a reasonable doubt, that Petitioner (1) knowingly (2) endeavored (3) to manufacture (4) methamphetamine. *See* OKLA. STAT. tit. 63, § 2-408 (2011); Okla. Unif. Crim. Jury Instr. No. 6-3B (2d ed.). The term "endeavoring" is defined as "any effort to do or accomplish the evil purpose that the law was enacted to prevent." Okla. Unif. Crim. Jury Instr. No. 6-16 (2d ed.).

On direct appeal, Petitioner appeared to challenge the second element by arguing the evidence presented at trial established the completed crime of manufacturing methamphetamine rather than the charged crime of endeavoring to manufacture methamphetamine. *See* Doc. 16-1, Pet'r App. Br., at 10-21; Doc. 16-3, OCCA Op., at 2. The OCCA rejected Petitioner's argument. In doing so, the OCCA reiterated that under OKLA. STAT. tit. 63, § 2-408 endeavoring to manufacture a controlled dangerous substance is not the same as attempting to manufacture a controlled dangerous substance. Doc. 16-3, OCCA Op., at 2 (citing *Tidmore v. State*, 95 P.3d 176, 177-78 (Okla. Crim. App. 2004)). The OCCA also stated, "A conviction for Endeavoring to Manufacture Methamphetamine is not barred where there is evidence of the commission of the completed crime." *Id.* (citing *Mehdipour v. State*, 956 P.2d 911, 914-15 (Okla. Crim. App. 1998)). Finally, the court noted that, under state law, "[t]he prosecutor retains discretion over which act to charge" unless the prosecutor's decision is based on an impermissible standard like race or religion. *Id.* at 2-3. Applying its interpretation of OKLA. STAT. tit. 63, § 2-408 to the facts of Petitioner's case, the OCCA reasoned,

> Contrary to Appellant's argument, there was more to the State's case than a completed manufacturing process and a bottle containing methamphetamine. Appellant was found driving his car containing everything necessary to manufacture methamphetamine—plastic tubing, syringes, a fuel can, sulfuric acid, a funnel, coffee filters, a measuring cup, wire cutters, cotton balls, and a 2 liter pop bottle containing a whitish grainy substance with two rubber tubes coming out of it which acted as a gas generator. Coleman fuel, an empty aluminum foil box, container of Morton salt, an empty box of pseudoephedrine and an open cold pack were also found in the car. Approximately 15-20 yards from Appellant's parked car was found a 2 liter green pop bottle containing the methamphetamine. Officers described the car as a "one pot methamphetamine lab." Officers testified that the items recovered from Appellant's car were for making methamphetamine in the bottle found in the parking lot or for use in a previous methamphetamine lab or were going to be used to cook methamphetamine. This evidence shows beyond a reasonable doubt that Appellant knowingly and intentionally endeavored to manufacture methamphetamine. *See Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559.

Doc. 16-3, OCCA Op., at 3.

In his habeas petition, Petitioner appears to argue the State failed to present sufficient evidence to establish the first element of the charged crime, i.e., that he "knowingly" endeavored to manufacture methamphetamine. Specifically, he argues "[t]here was no evidence" that he "had any knowledge" of the items found in his car that were consistent with the manufacturing of methamphetamine. Doc. 7 at 5. As Respondent points out, this argument differs from the one he presented to the OCCA on direct appeal. *See* Doc. 16 at 9. However, like Respondent, the Court will liberally construe Petitioner's *pro se* petition as challenging the sufficiency of the evidence as to both elements. *See* Doc. 16 at 9 & n.1. And, for two reasons, the Court agrees with Respondent that Petitioner is not entitled to habeas relief on his Ground 1 claim.

First, to the extent Petitioner's argument could be construed as challenging the OCCA's interpretation of OKLA. STAT. tit. 63, § 2-408, this Court "is bound by the state court's interpretation of its own law." *Hawkins*, 291 F.3d at 662.

Second, to the extent Petitioner challenges the OCCA's determination that the evidence is sufficient to support his conviction, this Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs*, 982 F.2d at 1487. And, because the OCCA applied the *Jackson* standard in rejecting Petitioner's claim,[5] this Court must defer to the OCCA's decision unless it is "objectively unreasonable." *Johnson*, 566 U.S. at 651; 28 U.S.C. § 2254(d)(1).

---

[5] The OCCA did not cite *Jackson*; instead, it cited its own precedent recognizing *Jackson* as the controlling legal principle. Doc. 16-3, OCCA Op., at 3; *see Easlick v. State*, 90 P.3d 556, 558-59 (Okla. Crim. App. 2004) (discussing and applying *Jackson* standard). Even if the OCCA had not cited *Easlick*, its decision would still be entitled to AEDPA deference. *See Miller v. Mullin*, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (applying § 2254(d) "notwithstanding the [OCCA's] failure to cite or discuss federal case law").

Based on this Court's review of the trial transcripts, the Court concludes Petitioner cannot overcome these "two layers of judicial deference." *Id.*

The record reflects that, at trial, the State presented detailed evidence regarding the traffic stop and subsequent search that resulted in Petitioner's conviction. Tulsa Police Officer Michelle Armentrout testified she stopped Petitioner near the intersection of Pine and Lewis for driving a vehicle with an expired tag. Doc. 17-8, Tr. vol. 3, at 272-75. Petitioner pulled into the parking lot of the Springdale Shopping Center. *Id.* at 275. When Armentrout spoke with Petitioner, he confirmed he owned the car and stated he had no insurance. *Id.* at 277. Petitioner's passenger, Ashley Snow, told Armentrout she had outstanding warrants. *Id.* at 280. Armentrout ran a warrants check on both Petitioner and Snow, confirmed Snow had an outstanding arrest warrant, and placed Snow under arrest. *Id.* at 281-82. Armentrout cited Petitioner for the tag and insurance violations, advised his car would be towed to the impound lot, and told Petitioner he was free to leave. *Id.* at 283-88. After Petitioner left, Armentrout and Officer Tyler Turnbough began an inventory search and discovered several items commonly associated with the manufacture of methamphetamine. *Id.* at 285-88, 291, 304. Armentrout described those items as including a fuel can, plastic tubing, syringes, a funnel, "a heat source, like a generator," sulfuric acid, and Coleman fuel. *Id.* at 288-90. The officers discontinued the search and requested assistance from officers with specialized training in recognizing and dismantling meth labs. *Id.* at 291-92. Turnbough testified he searched the area for Petitioner but could not find him. *Id.* at 325.

Petitioner's passenger, Ashley Snow, testified she saw Petitioner reach behind his seat to grab something and saw him throw a "colored bottle" out of his window as he pulled into the parking lot for the traffic stop. Doc. 17-8, Tr. vol. 3, at 332-35. After Petitioner stopped the car she

noticed tin foil and a straw on the dashboard. *Id.* at 339-40. Snow testified she also saw Petitioner toss foil out of her window during the stop. *Id.* at 340, 351-52. Snow told Armentrout about the bottle thrown out the window, but did not tell her about the foil. *Id.* at 351-52.

Officers Darrell Johnson and Brian Booth, members of the special investigation division, testified they were called out to the traffic stop to investigate a possible meth lab. *Id.* at 357, 370-71; Doc. 17-9, Tr. vol. 4, at 396-98, 401. Johnson testified he recovered from Petitioner's car an empty aluminum foil box and a two-liter pop bottle with plastic tubes coming out of it. *Id.* at 373-74. Johnson testified the bottle contained "whitish or tan granules," and appeared to be a gas generator used to manufacture methamphetamine. *Id.* at 374. Johnson also recovered a green, two-liter pop bottle from the parking lot. *Id.* at 376. He found the bottle 15-20 yards from Petitioner's car, and identified it as a "one-pot meth lab." *Id.* at 376-77. Johnson testified he took a sample from the bottle for further testing. *Id.* at 379. Jared Lieser, a forensic analyst, testified that methamphetamine was detected in the sample Johnson submitted for testing. Doc. 17-9, Tr. vol. 4, at 431, 438.

Officer Booth testified the green bottle found in the parking lot contained all materials necessary to manufacture methamphetamine. *Id.* at 404. He also testified the following items were recovered from Petitioner's car: a Coleman fuel can, drain cleaner, plastic tubing, coffee filters, a measuring cup, wire cutters, cotton balls, a can of Morton salt, and an empty Sudafed box. *Id.* at 406-16. Booth opined, based on his training and experience, that these materials were either used to make the meth lab found in the green bottle, used for a previous meth lab, or for use in a future meth cook. *Id.* at 418.

Viewing this evidence in the light most favorable to the prosecution and giving proper deference to the jury's finding of guilt and the OCCA's rejection of Petitioner's sufficiency

challenge, the Court agrees with Respondent that Petitioner has failed to make the requisite showings under § 2254(d) to obtain habeas relief. Thus, the Court denies relief on Ground 1.

**B.     Grounds 2- Illegal search; Ground 3- False testimony**

In Ground 2, Petitioner claims that the search of his car was illegal because it exceeded the scope of an inventory search. Doc. 7 at 7. In Ground 3, Petitioner claims that a witness at his trial falsely testified that he threw a pop bottle out of his car. *Id.* at 8.

As discussed, this Court previously determined that these claims were unexhausted and advised Petitioner it would apply an anticipatory procedural bar to these claims unless Petitioner could show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his procedural default of these claims. Doc. 14 at 5-6; *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. *Id.* A petitioner is additionally required to establish prejudice, which requires showing "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). The alternative is proof of a "fundamental miscarriage of justice," which requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

In his response to the Court's order to file a brief demonstrating either "cause and prejudice" or "a miscarriage of justice," Petitioner filed a brief urging this Court to forgive him for not appealing the state court's order denying his application for post-conviction relief or for "any other faults that [he] ha[s] done." Doc. 15 at 1. Even liberally construing Petitioner's *pro se* response

brief, the Court agrees with Respondent that Petitioner fails to make the necessary showings to excuse the procedural default of the claims he asserts in Grounds 2 and 3. Thus, the Court denies habeas relief as to Grounds 2 and 3.

## *CONCLUSION*

For the reasons stated above, the Court concludes that Petitioner has not established he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Therefore, the Court denies his petition for writ of habeas corpus.

## Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies habeas relief by rejecting the merits of petitioner's constitutional claims, the petitioner must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if the district court denies habeas relief on procedural grounds, the petitioner must make this showing by demonstrating both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Because the Court concludes that reasonable jurists would not debate the correctness of the Court's assessment of Petitioner's Ground 1 claim or the Court's finding that his claims in Grounds 2 and 3 are procedurally defaulted, the Court denies a certificate of appealability as to all claims.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The Clerk of Court shall note the substitution of Mike Hunter, Oklahoma Attorney General, in place of Rodney R. Redman, Warden, as party respondent.

2. The amended petition for a writ of habeas corpus (Doc. 7) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate Judgment shall be entered in this case.

ORDERED this 26th day of March 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE